COBB, J.,
Dissenting:
¶ 21. The majority has determined that PERS’s decision denying disability benefits to Ms. Shurden was arbitrary and capricious. Because I disagree, I respectfully dissent.
*265 ¶ 22. The majority correctly cites this Court’s definition of arbitrary and capricious. “An administrative agency’s decision is arbitrary when it is not done according to reason and judgment, but depending on the will alone.” Mississippi State Dep’t of Health v. Natchez Cmty. Hosp., 743 So.2d 973, 977 (Miss.1999). “An action is capricious if done without reason, in a whimsical manner, implying either a lack of understanding of or disregard for the surrounding facts and settled controlling principles.” Id. However, I must ask, what part of PERS’s decision does the majority cite that was not done according to reason, but depending on the will alone? Where did PERS perform its statutory duty in a whimsical manner? If our standard of review is mere window dressing, then we should admit that it is, and stop saying that we are applying a deferential standard, when in fact we are reviewing de novo.
¶ 23. It is clear that Shurden has suffered more than her share of medical ailments. However, as a reviewing court we are not permitted to step in the shoes of the administrative agency. The Medical Board that denied Shurden’s claim was made up of three physicians. The Appeals Committee that agreed with that determination included two other physicians. Sorting through voluminous and often contradictory medical records and testimony, then determinating whether an individual is permanently disabled, as that term is defined by the statute, is better left to the physicians than to the judges. This is the idea behind the creation and expansion of administrative agencies. “The existence within government of discreet areas of quasi-legislative, quasi-executive, quasi-judicial regulatory activity in need of expertise is the raison d’etre of the administrative agency.” McGowan v. Miss. State Oil & Gas Bd., 604 So.2d 312, 323 (Miss.1992). “Because of their expertise and the faith we vest in it, we limit our scope of judicial review.” Id.
¶ 24. The majority claims that this case is comparable to Public Employees’ Ret. Sys. v. Marquez, 774 So.2d 421, 425 (Miss.2000). The basis of this conclusion is that both Marquez and Shurden have suffered from a long list of ailments. However, the majority’s reliance on Marquez is misplaced. In Marquez we held that the PERS decision was arbitrary and capricious because:
PERS put forth no controverting evidence in the face of various medical diagnoses made by various credible doctors. When medical evidence and testimony given by Marquez is contrasted with PERS’s rationale for denial of benefits, the evidence supporting PERS’s decision to deny benefits appears insubstantial.
Id at 429 (emphasis added).
¶25. Here, Shurden’s application for disability is supported by her subjective testimony, and only one doctor, her current psychiatrist and former co-worker Dr. Russell’s. However, unlike Marquez, there is substantial controverting evidence in the record before us. On the PERS form, in response to the question as to whether Shurden’s disability was permanent, Dr. Fredericks wrote “chronic.” In his notes, Dr. Morgan wrote that all Shur-den’s lab work was normal except for her cholesterol level, and that could be controlled by diet. Dr. Morgan further wrote that he was under the impression that Shurden was trying to get some more Darvocet, and she would have to see another physician for that. Dr. Flowers found her to be generally a well developed woman who was in no acute distress. Dr. Fulcher told her several times she needed to go back to work, evidently to no avail. *266 By contrast, in Marquez there was no controverting evidence.”
¶ 26. Rather than Marquez, this case is more comparable to Byrd v. Public Employees’ Ret. Sys., 774 So.2d 434, 436 (Miss.2000) on this particular issue. In Byrd we affirmed the circuit court’s finding that PERS properly denied Byrd’s claim for permanent disability.[2] We went on to say:
Although the assessments of the medical personnel who treated Byrd are in stark contrast from one another, it was the job of PERS to determine which of these assessments'to rely on in making its decision. The opinions of Dr. Vohra and Charlene Toney, standing alone, are sufficient to support a finding that Byrd is not permanently disabled. To the contrary, had PERS found Byrd to be permanently disabled, Dr. Pearson’s opinion, standing alone, would appear to support such a finding. In rendering its decision to deny Byrd’s application for permanent disability benefits, PERS obviously gave more weight to the findings of Dr. Vohra and Charlene Toney than was given to the findings of Dr. Pearson. Such an act was within PERS’ discretion. Therefore, we hold that there is sufficient evidence in the record supporting PERS’ decision in this case.
Byrd, 774 So.2d at 438. As we stated in Public Employees’ Ret. Sys. v. Dishmon, 797 So.2d 888, 892 (Miss.2001):
The question here is not whether there was evidence in support of Dishmon’s disability, but whether there was substantial evidence to support the finding of the administrative agency. The standard of review limits this Court to reviewing the lower court’s decision to determine whether the record can support this finding. This Court may not substitute its own judgment for that of the agency which rendered the decision, nor may we re-weigh the facts of the case.
¶27. In the case before us there is substantial evidence in the record to support the findings of PERS, thus those findings were not arbitrary and capricious. If we are not going to follow our stated standard of review, we should say so. We should admit that whenever we disagree with PERS’s decision, we will reweigh the facts and substitute our own judgment for that of PERS. That is what the circuit court did. That is what the majority is doing. And because that is not our standard of review, I respectfully dissent.
PITTMAN, C.J., JOINS THIS OPINION.

. We reversed and remanded, however, because a physician who was on the Medical Board participated in the appeals process reviewing the Medical Board's decision.