# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-SA-01043-COA

SHERRY BUCKHAULTS                                                    APPELLANT

v.

PUBLIC EMPLOYEES' RETIREMENT SYSTEM                    APPELLEE
OF MISSISSIPPI

| | |
|---|---|
| DATE OF JUDGMENT: | 06/27/2018 |
| TRIAL JUDGE: | HON. JEFF WEILL SR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | GEORGE S. LUTER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: S. MARTIN MILLETTE III |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 08/27/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE BARNES, C.J., McDONALD AND C. WILSON, JJ.

### C. WILSON, J., FOR THE COURT:

¶1. Sherry Buckhaults worked as a "Mental Health Direct Care Alternate Supervisor" for the Ellisville State School. After being slapped on the right side of her face by a patient at work, Buckhaults filed an application for duty-related disability benefits with the Public Employees' Retirement System of Mississippi (PERS). The PERS Medical Board (Medical Board) concluded that Buckhaults's claim did not meet the statutory definition for duty-related disability and denied Buckhaults's request for duty-related disability retirement benefits. Buckhaults appealed the Medical Board's denial, and the PERS Disability Appeals Committee (Appeals Committee) likewise found that Buckhaults's request should be denied

because she was not disabled as a direct result of the on-duty incident. The PERS Board of Trustees (PERS Board) adopted the Appeals Committee's recommendation and denied Buckhaults's request for disability retirement benefits. Buckhaults then appealed to the Hinds County Circuit Court, and the circuit court affirmed the PERS Board's decision. Buckhaults now appeals to this Court; she contends that the PERS Board's decision is not supported by substantial evidence and is arbitrary and capricious. Disagreeing, we affirm.

FACTS AND PROCEDURAL HISTORY

¶2. On May 31, 2012, while working the night shift at the Ellisville State School, Buckhaults was slapped on the right side of her face by a developmentally-disabled male patient. The incident occurred around 5:25 a.m. Buckhaults testified that she did not lose consciousness from the slap but did develop an immediate headache. Buckhaults also reported having welts from the slap but no broken skin. Around 6:30 a.m., Buckhaults finished her shift, went home, and went to bed.

¶3. That afternoon, after getting some sleep, Buckhaults went to an urgent care clinic. According to Buckhaults's testimony, she had a stiff neck and an irritated eye from the slap. She was worried that the patient who slapped her might have had fecal matter on his hands from his colostomy. The nurse practitioner prescribed Buckhaults eye drops, told her to take ibuprofen for her headache and neck pain, and released Buckhaults to return to work with no restrictions. Buckhaults returned to work that night. During her shift that night, Buckhaults developed vertigo and became sick. Buckhaults continued to work until June 6, 2012, when she quit because she felt she could no longer perform her job.

¶4. On September 26, 2012, Buckhaults filed an application for PERS duty-related disability benefits based on the May 31, 2012 on-duty incident. Having only two years of service credit, Buckhaults was an unvested members of PERS, so she was not eligible for non-duty-related disability benefits. According to Buckhaults, she could not work due to dizziness, vertigo, nausea, headaches, and occasional vomiting—all of which she attributed to the May 31, 2012 incident.

¶5. On December 4, 2012, the Medical Board concluded Buckhaults's claim did not meet the statutory definition for duty-related disability and denied Buckhaults duty-related disability retirement benefits. Buckhaults appealed the Medical Board's denial. The Appeals Committee, comprised of two physicians and a nurse, who was also a lawyer, held an initial hearing on July 8, 2013. On March 17, 2014, the Appeals Committee provided the PERS Board a detailed fifteen-page statement of factual findings and conclusions of law.

¶6. In its statement, the Appeals Committee noted:

> The evidence shows that prior to the May 31, 2012, incident Ms. Buckhaults had well-documented problems with Meniere's disease in her left ear which her [ENT] specialist, Dr. [James] House, stated was not caused by a trauma. Meniere's disease is a disorder of the inner ear that is characterized by vertigo, nausea, vomiting, tinnitus, and progressive deafness due to swelling of the endolymphatic duct. . . . All of Ms. Buckhaults complaints are symptoms of Meniere's and the medical records document that they pre-date her work injury. In fact, the medical records indicate these symptoms developed in September 21, 2010, before she even started working at Ellisville State School. . . . While the medical records indicate that her dizziness and vertigo had improved somewhat in the weeks prior to the incident, there is no evidence that she had been cured. . . . The testing performed both before the work incident and shortly after the work incident supports this finding [that Ms. Buckhaults's ear condition is not related to a trauma] as the results are basically the same. In fact, the [electronystagmography (ENG)] performed two weeks after she was slapped showed no change from the prior ENG done

3

January 13, 2011, a year and a half earlier.

Based on this evidence, the Appeals Committee found that Buckhaults was not disabled as a direct result of an accident or traumatic event resulting in physical injury that occurred during the performance of duty, as required in order to quality for duty-related disability benefits.[1] The Appeals Committee thus recommended that Buckhaults's request for duty-related disability benefits be denied.

¶7. On June 24, 2014, the PERS Board approved and adopted the Appeals Committee's findings of fact and conclusions of law and denied Buckhaults's request for disability benefits. Buckhaults then appealed the PERS Board's decision to the circuit court. The parties briefed the appeal, and the circuit court affirmed the PERS Board's decision. Buckhaults now appeals the PERS Board's decision to this Court.

STANDARD OF REVIEW

¶8. The standard of review on appeal from an administrative decision of the PERS Board is limited to a determination of whether the PERS Board's decision (1) was supported by substantial evidence; (2) was arbitrary or capricious; (3) was beyond the authority of the Board to make; or (4) violated a statutory or constitutional right of the claimant. *Thomas v. Pub. Emps.' Ret. Sys.*, 995 So. 2d 115, 118 (¶14) (Miss. 2008).

¶9. Because the administrative agency sits as finder of fact, a reviewing court is obligated to show "substantial deference" to any determination of credibility or trustworthiness of witness testimony. *Pub. Emps.' Ret. Sys. v. Cobb*, 839 So. 2d 605, 609 (¶12) (Miss. Ct. App.

---

[1] Miss. Code Ann. § 25-11-114(6) (Rev. 2010).

4

2003). "There is a rebuttable presumption in favor of a PERS ruling. Neither the appellate court nor the circuit court is entitled to substitute its own judgment for that of PERS, and it is impermissible for a reviewing court to re-weigh the facts of the case." *Pub. Emps.' Ret. Sys. v. Card*, 994 So. 2d 239, 242 (¶15) (Miss. Ct. App. 2008) (quoting *Pub. Emps.' Ret. Sys. v. Dishmon*, 797 So. 2d 888, 891 (¶9) (Miss. 2001)). Thus, even if we would have reached a different conclusion had we been sitting as finder of fact, we may not re-weigh the evidence and substitute our own opinion for that of the PERS Board. *See Bynum v. Miss. Dep't. of Educ.*, 906 So. 2d 81, 91 (¶17) (Miss. Ct. App. 2005).

DISCUSSION

¶10. PERS members may claim disability benefits in two circumstances: (1) when the member is vested and becomes disabled for any reason, Miss. Code Ann. § 25-11-113(1)(a) (Rev. 2010), or (2) when the member, vested or unvested, becomes disabled in conjunction with her employment duty. Miss. Code Ann. § 25-11-114(6). Pursuant to section 25-11-113(1)(a), disability is defined as "the inability to perform the usual duties of employment or the incapacity to perform such lesser duties, if any, as the employer, in its discretion, may assign without material reduction in compensation, or the incapacity to perform the duties of any employment covered by [PERS]."

¶11. To receive disability benefits, a member must prove the following elements: (1) the member is mentally or physically incapacitated for the further performance of duty; (2) the incapacity is likely to be permanent; and (3) the member should be retired. Miss. Code Ann. § 25-11-113(1)(a). "Along with the requirements under section 25-11-113, an individual

5

who applies specifically for duty[-]related disability benefits must prove that [she was] disabled as a '*direct result* of an accident or traumatic event resulting in a physical injury occurring in the line of performance of a duty.'" *Ulrich v. Pub. Emps.' Ret. Sys.*, 2018-SA-00306-COA, 2019 WL 1448512, at *3 (¶13) (Miss. Ct. App. Apr. 2, 2019) (emphasis added) (quoting Miss. Code Ann. § 25-11-114). Buckhaults specifically applied for duty-related disability benefits.[2]

¶12. In this matter, the PERS Board affirmed the Appeals Committee's finding that Buckhaults was not disabled as a direct result of an accident or traumatic event resulting in physical injury that occurred during the performance of duty. On appeal, Buckhaults contends that the PERS Board's decision is not supported by substantial evidence and is arbitrary and capricious. "If an administrative agency's decision is not based on substantial evidence, it necessarily follows that the decision is arbitrary and capricious." *Pub. Emps.' Ret. Sys. v. Howard*, 905 So. 2d 1279, 1284 (¶14) (Miss. 2005) (quoting *Pub. Emps.' Ret. Sys. v. Marquez*, 774 So. 2d 421, 430 (¶35) (Miss. 2000)). "Substantial evidence has been defined by this Court as such relevant evidence as reasonable minds might accept as adequate to support a conclusion." *Davidson v. Pub. Emps.' Ret. Sys.*, 219 So. 3d 577, 581 (¶15) (Miss. Ct. App. 2017) (internal quotation marks omitted) (quoting *Knight v. Pub. Emps.' Ret. Sys.*, 108 So. 3d 912, 915 (¶13) (Miss. 2012)). "An administrative agency's decision is arbitrary when it is not done according to reason and judgment, but depending on the will alone." *Howard*, 905 So. 2d at 1285 (¶16) (quoting *Miss. State Dep't of Health v. Natchez*

---

[2] Buckhaults is only eligible for duty-related disability benefits because she is an unvested member of PERS. Miss. Code Ann. § 25-11-113(1)(a).

6

*Cmty. Hosp.*, 743 So. 2d 973, 977 (¶13) (Miss. 1999)). Along this same line, "[a]n action is capricious if done without reason, in a whimsical manner, implying either a lack of understanding of or disregard for the surrounding facts and settled controlling principles." *Id.* Because we find that the PERS Board's decision to deny Buckhaults's request for duty-related disability benefits is supported by substantial evidence, we affirm.

¶13. Buckhaults asserts that the PERS Board's decision is not supported by substantial evidence for three reasons: (1) it was uncontradicted that she was assaulted while in the line of duty; (2) her treating neurologist, Dr. Aremmia Tanious, stated that she suffered headaches, dizziness, balance difficultly, and vertigo since the incident; and (3) her treating neurologist also considered her "totally and permanently disabled from gainful employment." Buckhaults further asserts that Dr. Samuel Peeples, PERS's independent medical examiner, supported her treating neurologist's opinion of permanent disability.

¶14. Buckhaults contends that *Public Employees' Retirement System v. Trulove*, 954 So. 2d 501 (Miss. Ct. App. 2007), is instructive here. We disagree. In *Trulove*, PERS denied a claimant's request for duty-related disability benefits. *Id.* at 503 (¶11). There, "[t]he record indicate[d] that PERS reached its decision based on its opinion that a question exist[ed] as to whether the [alleged on-duty] accident actually occurred." *Id.* at 504 (¶13). The claimant appealed, and the Hinds County Circuit Court reversed PERS's denial and granted the claimant duty-related disability benefits. *Id.* at 501 (¶1). PERS appealed, and this Court affirmed the circuit court's reversal, finding that substantial evidence did not support PERS's contention that a question existed as to whether the claimant's alleged on-duty accident

7

actually occurred. *Id.* at 505 (¶15). This Court determined the claimant had satisfied her burden of establishing an on-the-job injury by providing both her medical records and the incident report; this Court further determined that PERS had failed to consider both the claimant's physician's notes and the claimant's incident report in reaching its decision. *Id.* at (¶¶15-16).

¶15. But *Trulove* is distinguishable from the matter at hand. Here, this is no dispute that an on-duty incident occurred. Instead, the PERS Board denied Buckhaults's request because it determined that Buckhaults was not disabled as a direct result of her on-duty incident. Further, the Appeals Committee considered all of Buckhaults's medical records in reaching this determination, which the PERS Board adopted.

¶16. While we recognize that individuals could reach differing conclusions based upon Buckhaults's medical records, our task on appeal is simply to determine whether substantial evidence supports the PERS Board's decision, not to re-weigh the evidence. In the lengthy statement of findings of fact and conclusions of law adopted by the PERS Board, the Appeals Committee addressed both Dr. Tanious's and Dr. Peeples's records and reports on Buckhaults. Considering these records and reports, as well as the records and reports of Dr. House, an ENT specialist, the Appeals Committee concluded that Buckhaults's disability was not a direct result of her May 31, 2012 on-duty incident. The PERS Board adopted this finding and denied Buckhaults's request for duty-related disability benefits. Upon reviewing the record, we find that there is substantial evidence to support this decision.

¶17. To begin, Buckhaults had a lengthy medical history of dizziness, vertigo, and deafness

prior to being slapped at work. Buckhaults's medical records indicate that these symptoms developed in September 2010. Although Buckhaults testified that she had not experienced vertigo in the year prior to the incident, her medical records contradict this testimony.[3] As Dr. House stated in one document, Buckhaults's post-incident "complaints are consistent with [M]eniere[']s disease."[4] Dr. House, Buckhaults's treating physician before the incident at issue, diagnosed Buckhaults with Meniere's disease in March 2011—over one year prior to her May 31, 2012 on-duty incident.

¶18. Moreover, objective testing performed two weeks after the incident showed no change from the same test performed in January 2011. We also note that while Dr. Peeples, the independent medical examiner whom the Medical Board appointed, indicated that he believed Buckhaults was currently disabled, Dr. Peeples did not indicate whether he believed the on-duty incident was the direct cause of Buckhaults's symptoms. And neither Dr. House nor Dr. Peeples opined that Buckhaults was *permanently* disabled. In fact, as recognized by Dr. Peeples in his report, Dr. House recommended that Buckhaults undergo a procedure, which he stated was effective in stopping vertigo spells 80% of the time. Taking the entire record into consideration, we find that there was substantial evidence to support the PERS

---

[3] Although Buckhaults's medical records overall indicated that her vertigo had improved, records from January 2012 indicate Buckhaults was experiencing significant vertigo, and records from early May 2012 indicate that Buckhaults had residual deafness, tinnitus, and vertigo.

[4] This contradicts Buckhaults's additional contention that "PERS arbitrarily and capriciously ruled '[a]ll of Ms. Buckhaults'[s] complaints are symptoms of Meniere's disease and the medical records document that they predate her work injury' when no medical report or testimony or expert support such finding."

Board's decision to deny Buckhaults's request for duty-related disability benefits.[5]

¶19.    Lastly, Buckhaults asserts that the PERS Board's determination that "[a]t most, the incident aggravated an already symptomatic condition and therefore does not meet the conditions of a duty-related disability under [section] 25-11-114" is arbitrary and capricious and not supported by substantial evidence.  According to Buckhaults, the PERS Board solely relied on the opinions of the members of the Appeals Committee, and no medical evidence supports the PERS Board's conclusion.  Buckhaults cites *Howard v. Public Employees' Retirement System of Mississippi*, 971 So. 2d 622 (Miss. Ct. App. 2007), for the proposition that "PERS [can]not replace its opinion with that of the medical evidence when the medical evidence does not support such[.]"  While this is true, we find that there is substantial medical evidence in the record to support the PERS Board's decision in this matter.

¶20.    In *Howard*, the PERS Board denied a claimant's request for permanent disability benefits, not related to an on-duty injury, due to "insufficient objective medical evidence to support her claim." *Id.* at 624 (¶1) (internal quotation mark omitted).  The claimant appealed, and the Hinds County Circuit Court affirmed.  *Id.*  The claimant appealed again, and this Court reversed, rendered, and remanded, finding "an objective review of [the claimant's]

---

[5] Buckhaults also points this Court to the fact that the Social Security Administration ("SSA") found her disabled beginning June 8, 2012.  But "[a]ppellate courts of this state have uniformly held that an SSA determination of disability is not binding on PERS." *Pub. Emps.' Ret. Sys. v. Smith*, 880 So. 2d 348, 354 (¶27) (Miss. Ct. App. 2004).  Further, the PERS analysis for duty-related disability and the SSA analysis for disability are not the same.  "Unlike the SSA, PERS considered whether [Buckhaults] became 'disabled *as a direct result of an accident or traumatic event resulting in a physical injury occurring in the line of performance of duty*,' which was required by . . . [s]ection 25-11-114(6)." *Id.* at 355 (¶31) (emphasis added).

10

medical records clearly indicates that she suffers from a severe case of fibromyalgia and can no longer perform her job duties." *Id.* at 627 (¶15). In that case "[t]he only medical evidence presented . . . was offered in support of [the claimant]'s claims, and that evidence went unrebutted by even the independent medical examiner appointed by PERS . . . ." *Id.* at 628 (¶16). The same is not true here.

¶21.   In this matter, the medical evidence shows that Buckhaults experienced dizziness and vertigo long before her on-duty incident. Still, Buckhaults contends that no medical evidence supports the PERS Board's position that, at most, the on-duty incident aggravated an already symptomatic condition. Reviewing the record, we disagree with Buckhaults's contention. As discussed *supra*, record evidence shows that Dr. House indicated Buckhaults's post-incident complaints were "consistent with [M]eniere[']s disease," which he had diagnosed over one year prior to the on-duty incident. Objective testing also showed no change in Buckhaults's condition before and after the on-duty incident. Moreover, even "when the relevant evidence and opinions of physicians conflict, it is the responsibility of PERS . . . to sort through the conflicting evidence and to determine which is more credible and persuasive." *Davidson*, 219 So. 3d at 582 (¶18). "We do not second-guess or re[-]evaluate such determinations when, as in this case, they are supported by substantial credible evidence." *Id.*

¶22.   Because substantial credible evidence supports the PERS Board's decision that Buckhaults was not disabled as a *direct* result of her May 31, 2012 on-duty incident at Ellisville State School, we affirm. "This Court may only apply the law as it is written, and

11

[section 25-11-114(6)] calls for the disability to be the direct result of the accident or traumatic event." *Smith*, 880 So. 2d at 353 (¶23) (quoting *Brinston v. Pub. Emps.' Ret. Sys.*, 706 So. 2d 258, 260 (¶11) (Miss. Ct. App. 1998)).

¶23. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, TINDELL, McDONALD, LAWRENCE AND McCARTY, JJ., CONCUR. J. WILSON, P.J., NOT PARTICIPATING.**